1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7 | TROY HOLLENBAUGH,

8 |                    Plaintiff,

9 |            v.

10 | CAROLYN COLVIN,
Commissioner of Social Security,

11

12 |                    Defendant.

No.: 4:16-CV-5037-EFS

**ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

13

14     Before the Court are cross summary judgment motions. ECF Nos. 14 &

15 22. Plaintiff Troy Hollenbaugh appeals a denial of benefits by the

16 Administrative Law Judge (ALJ). ECF No. 14. Mr. Hollenbaugh contends the

17 ALJ erred because she (1) failed to properly consider the statements of

18 Gregory A. Oberg, D.C., Mr. Hollenbaugh's treating chiropractor; (2)

19 improperly rejected the opinions of examining medical sources Dr. Opara

20 and Dr. Gomez; and (3) committed numerous credibility errors. ECF No. 14

21 at 1. The Commissioner of Social Security ("Commissioner") asks the

22 Court to affirm the ALJ's decision that Mr. Hollenbaugh is capable of

23 performing substantial gainful activity in a field for which a

24 significant number of jobs exist in the national economy. ECF No. 22.

25 After reviewing the record and relevant authority, the Court is fully

26 informed. For the reasons set forth below, the Court grants Defendant's

27

28

ORDER - 1

Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I.   Statement of Facts[1]

Mr. Hollenbaugh was born in 1960. AR 58. He completed eleventh grade before obtaining his GED. AR 61. Mr. Hollenbaugh has been diagnosed with hepatitis C and alleges a number of physical and psychological disabilities, including spinal stenosis, left rotator cuff tendinosis, arthritis in his left wrist, depression, and a pain disorder. ECF No. 14 at 2–5; *see, e.g.*, AR 363, 374–97, 404, 413. He has treated his back and shoulder pain with surgery, injections in his shoulder, and opiate pain medication. AR 374–97. Mr. Hollenbaugh spends his days at home resting, doing household chores including laundry and mowing the lawn, and reviewing his baseball card collection. AR 262–86.

Mr. Hollenbaugh has significant employment history, apparently limited only by lengthy periods of time when he was incarcerated. AR 287–302. Just prior to filing this claim, Mr. Hollenbaugh was working in construction as a concrete foundation pourer, AR 288, and he had worked in that position for various companies over the course of approximately five years. AR 287–90, 298. Mr. Hollenbaugh also reports working as an apprentice painter for approximately four years, AR 287, 292–95, and working as a salesman and delivery driver for a year prior to that, AR 287, 296.

/

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

**II.   Procedural History**

On August 27, 2012, Mr. Hollenbaugh protectively applied for disability insurance benefits, AR 208-09, and filed a claim for supplemental security income, AR 211-22. His alleged onset date was August 6, 2012. AR 208, 211. Mr. Hollenbaugh's claims were denied initially and upon reconsideration. AR 151-54, 161-64. Mr. Hollenbaugh filed a written request for an administrative hearing, which was held before ALJ Jo Hoenninger on September 5, 2014. AR 49.

On December 22, 2014, the ALJ issued a decision denying Mr. Hollenbaugh's claims. AR 31-48. The Appeals Council denied review of the ALJ's decision. AR 1-4. On March 30, 2016, Mr. Hollenbaugh filed this lawsuit appealing the ALJ's decision. ECF No. 1. The parties then filed the instant summary judgment motions. ECF Nos. 14 & 22.

**III. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision maker uses a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two.

ORDER - 3

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if he

establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work that exists in sufficient quantity in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In this case, the ALJ determined that Mr. Hollenbaugh was not disabled. At step one, the ALJ determined that Mr. Hollenbaugh had not engaged in substantial gainful activity following his alleged disability onset date. AR 33. At step two, the ALJ found that Mr. Hollenbaugh has the following severe impairments: spinal stenosis; left rotator cuff tendinosis; hepatitis C; depression, not otherwise specified; and a pain disorder associated with both psychological factors and a medical condition. AR 33. At step three, the ALJ found that Mr. Hollenbaugh's impairments did not meet or medically equal the severity of any listed impairments. AR 34. At step four, the ALJ found:

> [T]he claimant has the residual functional capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can stand and walk two hours in an eight-hour workday. He has no limitations on sitting in an eight-hour workday. He can occasionally use foot controls with the left lower extremity. He can occasionally climb ramps and stairs. He should not climb ladders, ropes and scaffolds. He can occasionally balance, stoop, crouch and crawl. He can frequently kneel. He can occasionally reach

overhead with the left upper extremity. He should avoid
concentrated exposure to hazards such as unprotected
heights and exposed moving mechanical parts. He can
understand and remember simple instructions and has
sufficient concentration, persistence and pace with more
complicated tasks. He should have only occasional, brief,
superficial contact with the general public and co-workers.
He should have no over-the-shoulder supervision.

AR 35. This step four finding was based in part on the ALJ's determination that Mr. Hollenbaugh's statements regarding the severity of his symptoms were "not entirely credible." AR 36. Based on this assessment, the ALJ concluded that Mr. Hollenbaugh could not perform any past relevant work. AR 42. The ALJ then found, at step five, that Mr. Hollenbaugh could perform jobs that exist in significant numbers in the national economy, such as small products assembler, weld inspector, and packing line worker. AR 43.

**IV.   Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human*

*Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). Reasonable inferences and conclusions drawn by the ALJ will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**V.    Analysis**

The Court addresses each of Mr. Hollenbaugh's challenges to the ALJ's decision.

**A.        Treating Chiropractor Gregory A. Oberg**

Mr. Hollenbaugh first claims that the ALJ failed to properly consider the opinion of Gregory A. Oberg, Mr. Hollenbaugh's chiropractor. Mr. Hollenbaugh argues that Dr. Oberg's opinion should not have been discounted simply because he is a chiropractor and not an "acceptable medical source." He also argues that the fact that Dr. Oberg recommended a separate physical capacity evaluation was not a reason to discount the opinion.

Under the Social Security regulations, "only licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Chiropractors are not "acceptable medical sources," and their opinions are not entitled to the same deference as acceptable medical sources. 20 C.F.R. § 404.1513(a), (d); *Helmke v. Astrue*, 371 F. App'x 748, 749 (9th Cir. 2010) ("Because chiropractors

are not 'acceptable medical sources,' their opinions are entitled to less weight than a physician's." (internal citations omitted)). Still, the opinions of "other sources" such as chiropractors may be used to show the severity of impairments and how those impairments affect a claimant's ability to work. 20 C.F.R. § 404.1513(d).

The ALJ assigned "some weight" to Dr. Oberg's opinion because "he has a history of treatment of the claimant," but the weight given to the opinion was limited by the fact that "he reported that the claimant should participate in a physical capacity evaluation to determine his capabilities" and "as a chiropractor, he is not an acceptable medical source under Social Security regulation." AR 41. In addition, the ALJ noted that greater weight was given to a conflicting opinion by Dr. Opara because he is a medical doctor who qualifies as an acceptable medical source and had examined the claimant. AR 41.

The Court holds that the ALJ did not err in giving less weight to Dr. Oberg's opinion as an "other source," and instead giving more weight to opinions by "acceptable medical sources." Significantly, the ALJ did not reject the opinion or even assign the opinion "little weight," and instead gave the opinion "some weight," which is not a low level of consideration. Moreover, the Court holds that it was appropriate for the ALJ to consider the fact that Dr. Oberg himself recommended an additional capacity examination, as that tends to indicate that Dr. Oberg did not consider himself fully informed as to Mr. Hollenbaugh's functional capacity.

//

/

ORDER – 8

**B.**        **Examining Medical Sources Dr. Opara and Dr. Gomes**

Mr. Hollenbaugh next claims that the ALJ inappropriately rejected portions of the opinions of Dr. Opara and Dr. Gomes, despite giving their opinions "great" and "some" weight, respectively. Specifically, the ALJ discounted Dr. Opara's conclusion that Mr. Hollenbaugh could only reach occasionally with his right arm. Mr. Hollenbaugh argues that this was a material error because the jobs recommended for him by the vocational expert all require reaching. ECF No. 14 at 9. As to Dr. Gomes, Mr. Hollenbaugh claims that the ALJ erred by discounting Dr. Gomes's finding that Mr. Hollenbaugh would be unable to maintain regular attendance.

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (alteration in original). There are three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide "clear and convincing" reasons for rejecting an examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted).

/

ORDER - 9

### 1.    Dr. Opara

Mr. Hollenbaugh contends that the ALJ failed to properly consider the opinion of examining physician, Dr. Opara, as to Mr. Hollenbaugh's ability to reach with his right arm. The ALJ explained:

> [Dr. Opara] examined the claimant and his opinion is generally consistent with his physical examination findings, other than regarding the claimant's shoulder function. The claimant complained of right shoulder pain at the time of the evaluation. However, Dr. Opara reported reduced range of motion in both shoulders. He somewhat inconsistently reported limitation to light work in part due to limited range of motion of the left shoulder. He also opined that the claimant should only occasionally engage in reaching with the right shoulder because of diminished range of motion of the right shoulder joint. The evidence of record as a whole suggests that during the period relevant to this decision, the claimant has been limited primarily by left shoulder pain despite reporting right shoulder complaints at times.

AR 40. The ALJ also noted that the complaints of right shoulder pain were accounted for by the limitation to light work. AR 40.

Mr. Hollenbaugh argues that the record supports his claim of right shoulder disability and cites numerous instances in the record when right shoulder pain or issues were mentioned. ECF No. 14 at 11. As the Commissioner notes, however, the instances cited are almost entirely based on self-reporting by Mr. Hollenbaugh. *See* ECF No. 22 at 4. The only clinical finding as to right shoulder pain is found in Dr. Opara's opinion. This can be contrasted with the multiple occasions between 2011 and 2014 when Mr. Hollenbaugh sought out injections and medication from his treating physician, Dr. Hocson, to address left shoulder pain. *See* 380–81, 383–84, 389–90, 436, 438–39. *Cf. Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do

ORDER - 10

not treat the claimant."). On only one occasion did Mr. Hollenbaugh raise the issue of bilateral shoulder pain to Dr. Hocson, and that was in March 2014, over 18 months after filing his social security and disability claim. *See* AR 442. Even then, Dr. Hocson did not make a finding as to bilateral shoulder pain, as Mr. Hollenbaugh declined an exam. AR 445. The Court holds that the ALJ was justified in finding that Mr. Hollenbaugh was primarily limited by left shoulder pain, and not right shoulder pain.

In addition, the ALJ noted that there were inconsistencies in Dr. Opara's report. Dr. Opara reported a clinical finding that Mr. Hollenbaugh's left shoulder was not limited in its range of motion, while the right shoulder was limited. AR 403. In his functional assessment, however, Dr. Opara advised that Mr. Hollenbaugh should be limited in lifting due to limited motion of the left shoulder, and the right shoulder is not mentioned in regard to lifting. AR 404. Dr. Opara then notes that Mr. Hollenbaugh should be limited in reaching only as to the right shoulder, due to the diminished range of motion in that joint, and does not mention the left shoulder as relevant to reaching. AR 404. Based on these inconsistencies and the evidence in the record, the Court holds that the ALJ was justified in finding that Dr. Opara's opinion as to reaching with the right shoulder should not be given great weight.

Accordingly, while Mr. Hollenbaugh argues that the hypothetical given to the vocational expert was flawed due to the omission of additional reaching restrictions for the right shoulder, the Court holds that the hypothetical given to the vocational expert — and the expert's

recommendation given as a result of that hypothetical — accurately reflected Mr. Hollenbaugh's impairments and are valid.

### 2.    Dr. Gomes

Mr. Hollenbaugh argues that the ALJ improperly rejected the portion of Dr. Gomes's opinion in which Dr. Gomes indicated that Mr. Hollenbaugh would be unable to maintain regular attendance due to his preoccupation with his physical impairments. The ALJ explained: "The record contains no support for Dr. Gomes' opinion that the claimant would be unable to maintain attendance due to his focus on his physical condition. That opinion is given little weight as purely speculative."

As an initial matter, the ALJ did not "reject" this portion of Dr. Gomes's opinion, but merely assigned it "little weight" due to the lack of evidence supporting the opinion. Mr. Hollenbaugh argues that the ALJ's finding is not consistent with the record because another psychiatrist, Dr. Hashmi, found that Mr. Hollenbaugh could not work given his impairments. Dr. Hashmi's report, however, does not mention an inability to maintain attendance. In addition, the ALJ assigned little weight to Dr. Hashmi's opinion because it was not signed,[2] was based on a one-time evaluation, and appeared to be based primarily on Mr. Hollenbaugh's self-reporting of symptoms. AR 41–42. Accordingly, Dr. Hashmi's opinion fails to refute the ALJ's finding that the record contains no support for Dr. Gomes's opinion that Mr. Hollenbaugh would be unable to maintain

---

[2] The Court notes that Dr. Hashmi's opinion was electronically signed, as noted on the final page of the report, AR 450, but that fact is immaterial to the Court's findings on this issue.

ORDER - 12

attendance. The Court holds that the ALJ appropriately discounted the relevant portion of Dr. Gomes's opinion.

### C. Credibility Determination

Mr. Hollenbaugh argues the ALJ relied on invalid reasons in determining that his testimony regarding the severity and limiting effects of his impairments was not entirely credible. Specifically, Mr. Hollenbaugh argues that the ALJ improperly relied on findings that: (1) Mr. Hollenbaugh obtained unemployment benefits while his application was pending; (2) he was not "fully compliant with treatment recommendations," AR 36; (3) his daily activities were inconsistent with his symptom testimony; (4) his criminal history undermined his credibility; and (5) he made an inconsistent statement regarding manufacturing methamphetamine while accepting social security payments.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014. Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides

ORDER - 13

specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). To discredit a claimant's testimony after finding that a medical impairment exists, however, "the ALJ must provide specific, cogent reasons for the disbelief." *Id.* (internal quotation marks omitted). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Id.* at 636.

In this case, the ALJ fully documented the testimony of Mr. Hollenbaugh as to the intensity, persistence, and limiting effects of his impairments. AR 36. The ALJ then found that Mr. Hollenbaugh's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR 36. The ALJ continued on for approximately six pages outlining Mr. Hollenbaugh's medical history and how it is inconsistent with his testimony regarding the severity of his symptoms. AR 35–42.

First, the ALJ cited various medical records that cast doubt on the severity of Mr. Hollenbaugh's symptoms. The ALJ reviewed records from Mr. Hollenbaugh's treating physician, Dr. Hocson, and noted that Mr. Hollenbaugh initially continued to work despite reporting pain, that the pain was "treated conservatively," and that Mr. Hollenbaugh did not

follow through with a recommendation that he obtain an MRI. AR 37. Later, the ALJ cited additional records from Dr. Hocson that Mr. Hollenbaugh was not in compliance with blood pressure medication and needed to reestablish contact with a doctor for hepatitis C treatment. AR 38. The ALJ noted that no treatment is documented for hepatitis C. AR 39. The ALJ also cited the fact that Dr. Peacock referred Mr. Hollenbaugh to a neurologist and that his treating chiropractor, Mr. Oberg, referred Mr. Hollenbaugh to a doctor at the Kadlec Neuroscience Center, but Mr. Hollenbaugh did not follow through with either recommendation. AR 37–38.

The ALJ explained that Dr. Opara, the examining physician, concluded that Mr. Hollenbaugh "can stand and/or walk two hours of an eight-hour workday," "has no limitation on sitting," and "can lift and carry 20 pounds occasionally and 10 pounds frequently." AR 41. The ALJ cited the more conservative opinion of medical consultant Dr. Stanley that "the claimant remains able to perform light work with only occasional use of foot controls with the left leg; occasional climbing; and avoidance of concentrated exposure to hazards," AR 41, but found that greater limitation was appropriate based on the evidence in the record and Dr. Opara's opinion. AR 41. The ALJ also noted that she found a limitation based on partially crediting Mr. Hollenbaugh's statements: "At the hearing, the claimant complained primarily of left shoulder pain and limitation and I have credited his complaints to the extent that he is limited to work which involves only occasionally reaching above shoulder level." AR 41.

ORDER – 15

The ALJ also cited to other inconsistencies that contributed to her negative credibility finding, including Mr. Hollenbaugh's self-reported daily activities:

> The claimant has described activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He reported in November 2012 that he performs some housework, including vacuuming and laundry; he mows the lawn when it is due; and he performs some maintenance work at home. He testified at the hearing that since August 6, 2012, he has performed volunteer work for relatives when they need help.

AR 39 (internal citation omitted). The ALJ also noted that the evidence "suggests that the claimant's work did not end due to disability," as "he testified at the hearing that he was laid off from his most recent work doing foundation/concrete work . . . because the foundation crew was disbanded." AR 39. An additional inconsistency identified by the ALJ was that Mr. Hollenbaugh received unemployment benefits while his social security and disability claims were pending, and, as the ALJ explained, "[i]n order to qualify for such benefits, applicants must typically affirm that they are capable of working." AR 39.

The ALJ also noted that Mr. Hollenbaugh's "credibility is diminished by his criminal history." AR 39. The ALJ advised that "prior felony convictions do not singularly bar a finding of disability," but that "a criminal record[] does cast doubt on the claimant's veracity, character, and truthfulness," and Mr. Hollenbaugh's crimes "necessarily involv[ed] dishonesty and deception." AR 39–40. In addition, the ALJ cited the fact that "in response to specific questioning by me at the hearing, the claimant acknowledged that during a portion of the time he was receiving SSI payments, he was engaging in manufacture of

ORDER – 16

methamphetamine." AR 40. Mr. Hollenbaugh subsequently refuted that admission, but the ALJ concluded that the "inconsistent statements further diminish his credibility." AR 40. Despite Mr. Hollenbaugh's indications to the contrary, the inconsistencies noted by the ALJ are all valid considerations for the ALJ's credibility assessment. *See Orn*, 495 F.3d at 636.

Mr. Hollenbaugh argues that the ALJ improperly considered Mr. Hollenbaugh's noncompliance with medical recommendations as a basis for discrediting his statements. The Court holds that Mr. Hollenbaugh's failure to follow through with recommendations and referrals by treating sources regarding neurological and pain complaints, along with his failure to seek treatment for his hepatitis C, are proper considerations for the ALJ in assessing the claimant's credibility. *See Orn*, 495 F.3d at 636. The fact that Mr. Hollenbaugh did not have insurance for a period and could not travel to his treating physician are also appropriate considerations, but these explanations fail to explain all of the instances of noncompliance, as Mr. Hollenbaugh was noncompliant during periods when he had insurance and there is no evidence that he could not have pursued treatment locally. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (A claimant's failure to assert a "good reason[]" for failure to seek treatment or follow a proposed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony."). Accordingly, the Court holds that the ALJ did not err by failing to discuss explanations for the noncompliance in her decision. Moreover, based on the one-sentence reference to noncompliance in the decision, it is clear that the ALJ's credibility finding was primarily based on other

factors, and including the partial explanations for noncompliance, even if credited, would not have affected the credibility finding.

The ALJ's findings regarding Mr. Hollenbaugh's daily activities are also appropriate. Mr. Hollenbaugh argues that the ALJ said that reported daily activities "disqualify Mr. Hollenbaugh from being considered as having disabling symptoms and limitations." ECF No. 14 at 16. The ALJ did not make a statement to that effect and found only that "[Mr. Hollenbaugh's] reported activities are consistent with the above-described residual functional capacity assessment for sedentary to light work." AR 39. Mr. Hollenbaugh is correct that "impairments that would unquestionably preclude work and all of the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." ECF No. 14 at 16–17 (quoting *Garrison*, 759 F.3d at 1016). Nevertheless, the ALJ may certainly consider the types of activities performed and whether they are consistent with the level of disability claimed. *Fair*, 885 F.2d at 603. The Court holds that the ALJ was justified in finding that Mr. Hollenbaugh's reported activities of vacuuming, doing laundry, mowing the lawn, doing maintenance work at home, and occasionally helping relatives with projects are fairly rigorous activities that are consistent with sedentary to light work.

As to unemployment benefits, Mr. Hollenbaugh argues: "The receipt of unemployment benefits does not support an ALJ's finding that a claimant is not credible where the record does not establish that the claimant held himself out as capable and available for full-time work." ECF No. 14 at 13. He notes that "courts have interpreted the relationship between disability and unemployment benefits as

inconsistent, but not preclusive." ECF No. 14 at 13. These arguments are not in conflict with the ALJ's finding in this case. The ALJ noted only that in order to receive unemployment benefits, applicants generally must affirm that they are able to work. AR 39. She did not find that Mr. Hollenbaugh had made such an affirmation in his unemployment application. In addition, the ALJ in no way indicated that the finding that Mr. Hollenbaugh received unemployment benefits precluded him from obtaining social security and disability benefits, it was simply one of many factors considered by the ALJ.

Regarding Mr. Hollenbaugh's criminal history, Mr. Hollenbaugh argues that his history does not discredit his allegations of pain and objective evidence of impairment. The ALJ did not make such a finding and, as explained above, weighed the objective evidence in the record when assessing Mr. Hollenbaugh's credibility and level of impairment. In fact, the ALJ expressly stated that a criminal record does not bar a finding of disability, but is simply a factor that weighs against a claimant's veracity. AR 39. His criminal history was an appropriate consideration in assessing Mr. Hollenbaugh's reputation for truthfulness. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Similarly, it was appropriate for the ALJ to consider Mr. Hollenbaugh's inconsistent statements regarding manufacture of methamphetamine. Mr. Hollenbaugh stated during the hearing that, in the past, he manufactured methamphetamine while receiving social security payments. AR 55. He later submitted a filing explaining to the ALJ that he had not actually manufactured methamphetamine during that period and

ORDER – 19

had instead only used methamphetamine. AR 323–25. It is important to note that the ALJ did not indicate that the manufacture of methamphetamine influenced her credibility finding, but noted only that the inconsistent statements regarding the manufacturing "further diminish his credibility." AR 40. Such inconsistent statements are relevant to credibility. *See Thomas*, 278 F.3d at 958–59.

Based on the evidence in the record — as compared with Mr. Hollenbaugh's disability reports and testimony regarding the severity, intensity, and limiting effects of his impairments — the ALJ found that Mr. Hollenbaugh's subjective statements were not credible. While the findings regarding noncompliance, daily activities, or criminal history alone may not have been sufficient to justify the ALJ's credibility finding, all of the considerations discussed above, in combination with the objective findings in the record, justify the ALJ's credibility finding. The ALJ provided specific, clear, and convincing reasons for rejecting the claimant's testimony as to symptom severity. The Court therefore holds that the ALJ and did not err in finding Mr. Hollenbaugh's testimony not entirely credible.

**VI.  Conclusion**

For the above-given reasons, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. The Court notes, however, that neither this Court's decision nor the decision of the ALJ should be read to indicate that Mr. Hollenbaugh does not suffer from valid impairments. These decisions simply reflect the fact that the information provided in the record does not support a

ORDER – 20

finding of disability under the standards outlined by the Social Security Administration.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Mr. Hollenbaugh's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED.**

3.    The Clerk's Office is to enter **Judgment** in favor of the Commissioner.

4.    The case shall be **CLOSED.**

**IT IS SO ORDERED.**    The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Jo Hoenninger.

**DATED** this 9th  day of January 2017.


              ____s/Edward F. Shea_____
                     EDWARD F. SHEA
              Senior United States District Judge

Q:\EFS\Civil\2016\5037.Hollenbaugh.ord.deny.ss.lc02.docx

ORDER - 21